# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |  |
|---|---|---|
| ANTONIA ARMSTRONG, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | Cv. No. 2:12-cv-02980-JPM-dkv |
| v. | ) | Cr. No. 2:09-cr-20477-JPM-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## ORDER DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,
## DENYING CERTIFICATE OF APPEALABILITY,
## CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
## DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL,
## AND DENYING MOTION FOR REFUND

Before the Court is a Motion to Vacate Sentence Pursuant to Title 28 U.S.C. § 2255 ("§ 2255 Motion") filed by Movant, Antonia Armstrong, Bureau of Prisons register number 23458-076, who is currently incarcerated at the Medical Center for Federal Prisoners in Springfield, Missouri. (§ 2255 Mot., *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 1.) For the reasons stated below, the Court DENIES the § 2255 Motion.

## I. PROCEDURAL HISTORY

### A. Criminal Case Number 09-20477

On November 17, 2009, a federal grand jury returned a single-count indictment charging that, on or about May 8, 2009, Armstrong, a convicted felon, knowingly possessed a Taurus .357 caliber revolver, in violation of 18 U.S.C. § 922(g). (Indictment, *United States v. Armstrong*, No. 2:09-cr-20477-JPM (W.D. Tenn.), ECF No. 1.) The factual basis for the charge is stated in the presentence report ("PSR"):

**The Offense Conduct**

5.　　　According to the investigative file, on May 8, 2009, detectives with the Memphis Police Department responded to a narcotics violation at 4206 Clydesdale in Memphis, TN. The reporting detective advised that on the same day a narcotic detector K-9 was routinely scanning packages at FedEx when the K-9 gave a positive alert for the odor of illegal narcotics inside a package (tracking #869234561703). The package was addressed to Angeles Tucker at 4206 Clydesdale and according to the label, was sent from Lonnie Walton at 7948 Winchester #109-108 in Memphis, TN.

6.　　　A state search warrant was obtained for the package which was opened at the Shelby County Sheriff's narcotics office. The package was found to contain **4.2 pounds of marijuana** (TGW) and had been packaged in four large vacuum sealed bags. Subsequently detectives obtained and executed a state anticipatory warrant at 4206 Clydesdale.

7.　　　An undercover officer delivered the package to the address, where Angeles Tucker signed for it and entered the rear of the residence with the package. A few minutes later the search warrant was executed. Detectives knocked and announced and after receiving no answer, they forced entry into the residence. Detectives immediately secured **Antonia Armstrong** in the den area. Angeles Tucker was observed to exit the rear of the residence with the delivered FedEx package and attempted to hide it behind a barbeque grill behind the home. Tucker was taken into custody. Florence Crowell was detained outside of the residence. (It should be noted that Crowell is the owner of the home and **Armstrong** and Tucker's disabled mother.) Both Tucker and **Armstrong** were shown a copy of the search warrant and advised of their rights.

8.　　　A search of the residence revealed several firearms and additional narcotics. In the den area where **Armstrong** was noted to have been residing, detectives located a **Taurus .357 magnum revolver (serial # SJ84078)** fully loaded with **five .357 rounds** inside a sock drawer. Several pieces of identification in the name of **Antonia Armstrong** were located in the same drawer. In another drawer, **26.8 grams of marijuana (TGW)** was recovered. A **Cobra FS380 pistol (serial # FS021701)** with a **magazine and seven .380 caliber rounds** was located inside a vanity in the southwest bedroom. A **Taurus PT145 pistol (serial # 14518NVL)** with **two magazines and nine .45 caliber rounds** was located inside a dresser in the same bedroom. A digital scale was found on an end table in the den. **Armstrong** had $357 in his possession at the time of his arrest.

9.　　　**Armstrong** and Tucker were transported to the narcotics office. Both refused to answer any questions or cooperate with the investigation. A check revealed that **Armstrong** was a convicted felon. Detectives found

that **Armstrong** and Lonnie Walter had previously been stopped in Oklahoma and found to be in possession of $13,960.00 (date unknown). The firearms were not manufactured in the State of Tennessee and therefore traveled in interstate commerce.

(PSR ¶¶ 5-9.)

A jury trial commenced on January 11, 2011, and concluded on January 14, 2011. (Min. Entries, *United States v. Armstrong*, No. 2:09-cr-20477-JPM (W.D. Tenn.), ECF Nos. 45, 48, 50, 51.) The jury returned a guilty verdict on January 14, 2011. (Verdict, *id.*, ECF No. 54.)

Sentencing was scheduled to be held on June 8, 2011; July 25, 2011; and August 25, 2011, but Armstrong did not appear at any of these hearings. (Min. Entries, *id.*, ECF Nos. 65, 68, 70.) At a hearing on November 14, 2011, the Court sentenced Armstrong in absentia as an armed career criminal to a term of imprisonment of three hundred twelve months, to be followed by a five-year period of supervised release. (Min. Entry, *id.*, ECF No. 76.)[1] Judgment was entered on November 14, 2011. (J. in a Criminal Case, *id.*, ECF No. 78.) Armstrong did not appeal.

---

[1] The 2010 edition of the *Guidelines Manual* was used to calculate Armstrong's sentencing range. (*See* PSR Worksheet A.) Pursuant to § 2K2.1(a)(4) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of a firearm is 24 if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense. (*See* PSR ¶ 13.) Armstrong received a two-level enhancement because the offense involved three firearms pursuant to U.S.S.G. § 2K2.1(b)(1)(A). (*See id.* ¶ 14.) Armstrong received a four-level enhancement for using or possessing the firearm in connection with another felony offense, drug trafficking, pursuant to U.S.S.G. § 2K2.1(b)(6). (*See id.* ¶ 15.) Armstrong also received a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, resulting in a total offense level of 32. Given his criminal history category of VI (*id.* ¶ 33), the guideline sentencing range ordinarily would have been 210-262 months.

Because of his prior convictions for violent felonies, however, Armstrong was sentenced as an armed career criminal pursuant to the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and U.S.S.G. § 4B1.4. (*See* PSR ¶¶ 22, 26-28, 30.) Pursuant to U.S.S.G. § 4B1.4(b)(3)(B), the total offense level was 34. (*See id.* ¶¶ 22-23.) The guideline sentencing range was 262-327 months. (*See id.* ¶ 62.) Armstrong was also subject to a mandatory minimum sentence of 15 years, or 180 months, pursuant to 18 U.S.C. § 924(e). (*See id.* ¶ 61.)

**B.      Case Number 12-2980**

On November 12, 2012, Armstrong, through then-counsel Robert Brooks, filed a Motion to Vacate Sentence Pursuant to Title 28 U.S.C. § 2255 ("§ 2255 Motion"), which asserted that "[t]he petitioner received ineffective assistance of counsel in the pre-trial and trial stages of his case, in violation of his Sixth Amendment rights."  (§ 2255 Mot. at 3, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 1.)

On November 13, 2012, Armstrong, through counsel, filed a Motion for Extension of Time to Amend 2255 Motion, which asked for a ninety-day extension, until and including Monday, February 11, 2013, "to allow counsel to further supplement the allegations contained therein once he has had the opportunity to conduct a review and investigation of the case, research any potential issues, and prepare a supplemental motion."  (First Mot. for Extension of Time to Amend at 1, *id.*, ECF No. 3.)  On November 14, 2012, the Court granted the Motion for Extension of Time and stated that Armstrong "has up to and including February 12, 2013, to amend the 2255 Motion."  (Order Granting First Mot. for Extension of Time to Amend, *id.*, ECF No. 4.)

Armstrong did not file an amendment to his § 2255 Motion on or before February 12, 2013.  Instead, on February 14, 2013, Brooks filed a Motion to Withdraw as Attorney for Petitioner, which stated that,

> due to his having been retained at the last minute he had to file a generalized petition prior to thoroughly reviewing the case for viable issues in order to avoid the running of the statute of limitations.
>
> Now having completed that review and having advised the petitioner that there is nothing more that counsel can do for him counsel wishes to withdraw in order to allow the defendant to file a pro se amendment or ask the Court to appoint counsel to represent him.

(Mot. Withdraw Att'y at 1, *id.*, ECF No. 5.) On April 1, 2013, the Court granted the motion for leave to withdraw. (Order Granting Mot. Withdraw Att'y, *id.,* ECF No. 6.)

On May 15, 2013, Armstrong filed a *pro se* Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 ("*pro se* § 2255 Motion"), asserting "Lack of Dominion And Control Established By Government, Lack Subject Matter Jurisdiction As To Elements To Convict For 922(g), And Invalid Conviction For A 922(g) Non-existent Offense" and various claims of ineffective assistance of counsel, including that counsel failed to file a notice of appeal despite being instructed to do so. (*Pro se* § 2255 Mot., *id.*, ECF No. 8.)

On May 16, 2013, Armstrong filed a motion, titled "Petitioner's Request for Extension of Time to File Amended [sic] in the Nature of F.R.Civ.P. – 15," which sought a ninety-day extension of time to amend his § 2255 motion. (Second Mot. for Extension of Time to Amend, *id.*, ECF No. 7.) The Court granted that motion on June 6, 2013. (Order Granting Second Mot. for Extension of Time to Amend, *id.*, ECF No. 9.)

On July 5, 2013, Armstrong filed a "Motion to Amend 28 U.S.C. § 2255" ("Third Mot. to Amend"), which argued that, in light of the Supreme Court's decision on *Alleyne v. United States*, 133 S. Ct. 2151 (2013), he was not properly sentenced as an armed career criminal and various other enhancements to his sentence were no longer valid. (Third Mot. to Amend, *id.*, ECF No. 10.)

On August 12, 2013, Armstrong filed a "Motion To Amend Previous Motion Pursuant To 28 U.S.C. 2255 in light of U.S. Descamps No. 11-9540 2013 and Memorandum of Law in Support" ("Fourth Mot. to Amend"), which argued that, in light of the Supreme Court's decision in *Descamps v. United States*, 133 S. Ct. 2276 (2013), he should no longer be classified as an armed career criminal. (Fourth Mot. to Amend, *id.*, ECF No. 11.)

On November 20, 2013, Armstrong filed a "Motion to Voluntarily Dismiss The Amended 28 U.S.C. § 2255 Pleadings and To Proceed on the Merits of The Original § 2255 Pleading," which sought to "voluntarily dismiss his Amended 28 U.S.C. § 2255 pleading and . . . request for the Court to proceed on the Merits of the original § 2255 pleading by reestablishing the prior briefing schedule." (Mot. to Voluntarily Dismiss Am. § 2255 at 1, *id.*, ECF No. 14.) Attached to this motion was a copy of a page from the docket, on which ECF Nos. 10 and 11 were circled. (*Id.* at PageID 81.)

On May 29, 2014, Armstrong filed a "Motion for Due Process on 28 U.S.C. § 2255 Habeas Corpus Petition", in which he asked that the Government be directed to respond. (Mot. Due Process on § 2255 Motion, *id.*, ECF No. 15)

The Court issued an order on June 17, 2014, that, *inter alia*, granted the motion to withdraw the motions seeking leave to amend, denied the motions for leave to amend, denied the Motion for Due Process, and directed Movant to file an amended motion on the official form within twenty-eight days. (Order Addressing Pending Motions, *id.*, ECF No. 16.) The order explained that:

> Armstrong's original Motion to Vacate Sentence Pursuant to Title 28 U.S.C. § 2255 (ECF No. 1), which was filed by counsel, follows the format of the official form but is not signed under penalty of perjury by Armstrong or by someone authorized to sign on his behalf. Armstrong's 38-page pro se Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255 (ECF No. 8) is not filed on the official form and does not substantially follow the format of the official form. That filing also is not signed under penalty of perjury. Use of the official form is necessary to permit the Court to review the issues presented in an efficient manner.

(*Id.* at 4.) Armstrong was instructed that "[t]he [official] form must be completely filled out and must be signed by Movant under penalty of perjury" (*id.*) and that he may submit a legal memorandum, not to exceed twenty pages in length, with his amended § 2255 motion (*id.* at 4 n.3).

On July 18, 2014, Armstrong filed his "Motion to Amend 28 U.S.C. § 2255 Motion To Vacate Or Correct Sentence Pursuant to Rule Federal R. Civil Procedure and Memorandum In Support Thereof" ("Fifth Motion to Amend") (Fifth Mot. to Amend, *id.*, ECF No. 19), accompanied by his proposed amended § 2255 Motion (First Am. *pro se* § 2255 Mot., *id.*, ECF No. 20). On August 22, 2014, the Court denied Movant's Fifth Motion to Amend without prejudice because it did not comply with the Order issued on June 17, 2014. (Order Denying Fifth Mot. to Amend at 4-5, *id.*, ECF No. 21.)

On September 12, 2014, Armstrong filed a Sixth Motion to Amend his § 2255 Motion. (Sixth Mot. to Amend, *id.*, ECF No. 22.) The motion to amend was accompanied by a § 2255 Motion on the correct form. (Second Am. *pro se* § 2255 Mot., *id.*, ECF No. 22-5.) This motion presents the following issues:

1.      "Tyrone Jemal Paymor Assistant Public Defender rendered Ineffective Assistance by failing to file an Appeal" (Second Am. *pro se* § 2255 Mot. at 5, *id.*, ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 1-3, *id.*, ECF No. 22);

2.      "Tyrone Jemal Paylor rendered Ineffective Assistance by failing to challenge ACCA Enhanc[e]ment" (Second Am. *pro se* § 2255 Mot. at 6, *id.*, ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 4, *id.*, ECF No. 22);

3.      "Tyrone Jemal Paylor[] rendered Ineffective Assistance by failing to challenge ACCA, based on conviction obtained by Alford Plea" (Second Am. *pro se* § 2255 Mot. at 8, *id.*, ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 5-6, *id.*, ECF No. 22);

4. "Tyrone Jemal Paylor[] rendered Ineffective Assistance Of C[o]unsel by failing to move for rule 29 Motion" (Second Am. *pro se* § 2255 Mot. at 9, *id.*, ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 7, *id.*, ECF No. 22);

5. "Tyrone Paylor[] rendered Ineffective Assistance by failing to request Suppression Hearing" (Second Am. *pro se* § 2255 Mot. at PageID 183, *id.*, ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 8, *id.*, ECF No. 22);

6. "Tyrone Paylor[] rendered Ineffective Assistance for failing to Object to Subject Matter Jurisdiction, pursuant to ACCA" (Second Am. *pro se* § 2255 Mot. at PageID 183, *id.*, ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 9-10, *id.*, ECF No. 22);

7. Tyrone Paylor[] render[e]d Ineffective Assistance of Counsel by failing to move for a Rule 29-Motion" (Second Am. *pro se* § 2255 Mot. at PageID 183, *id.*, ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at PageID 11-15, *id.*, ECF No. 22).

On November 20, 2014, the Court granted Armstrong's Sixth Motion to Amend and directed the Government to respond. (Order Granting Leave to Amend and Directing United States to Respond, *id.*, ECF No. 23.) The Government responded on January 20, 2015. (Resp., *id.*, ECF No. 27.) Armstrong filed a Reply on March 10, 2015. (Reply, *id.*, ECF No. 33.)

On August 10, 2015, Armstrong filed a motion requesting an order directing his former § 2255 counsel, Robert Brooks, to refund him $3,650. (Mot. for Refund, *id.*, ECF No. 35.) This Motion is currently pending before the Court.

On January 26, 2016, the Court granted an evidentiary hearing as to Armstrong's claim that his attorney rendered ineffective assistance of counsel for failing to file a notice of appeal. (Order Granting Evidentiary Hr'g, *id.*, ECF No. 37.)  The evidentiary hearing was held on March 28, 2016.  (Min. Entry, *id.*, ECF No. 58.)

## II.        THE LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

"[A] § 2255 motion is not a substitute for a direct appeal." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (internal quotation marks omitted).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).  "Defendants must assert their claims in the ordinary course of trial and direct appeal."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively

outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id.*

Even constitutional claims that could have been raised on direct appeal, but were not, are barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 699-700 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."

*Id.* (internal quotation marks omitted). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). The movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[2] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable

---

[2] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." *Id.* at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

effect on the outcome of the proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Richter*, 562 U.S. at 104 (citations and internal quotation marks omitted); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

## III. ANALYSIS

### A. Failure to File Notice of Appeal (Claim 1)

In Claim 1, Armstrong alleges that his trial counsel rendered ineffective assistance by failing to file a notice of appeal. (Second Am. *pro se* § 2255 Mot. at 5, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22-5.) Specifically, Armstrong asserts, and submits an affidavit in which he states under oath, that he advised counsel to file a timely notice of appeal, but that counsel failed to do so. (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 1-2, *id.*, ECF No. 22; *see also* Armstrong Aff. ¶ 10, *id.*, ECF No. 22-4.) The Government contends that Armstrong never instructed his trial counsel, Tyrone Paylor, to file a notice of appeal, and argues that Armstrong could not have done so because he did not appear at the sentencing hearing. (Resp. at 6, *id.*, ECF No. 27.) The Government also submits Paylor's affidavit, in which he states under oath that he "had not heard from Mr. Armstrong in months" prior to the sentencing and had not been instructed to file a notice of appeal. (Paylor Aff. ¶ 2(a),

*id.*, ECF No. 27-1.)  Paylor also states that he wrote a letter to Armstrong after the sentencing in absentia, informing Armstrong of the sentence and that he had ten days from November 14, 2011, to file a notice of appeal.  (*Id.*)

At the evidentiary hearing on Monday, March 28, 2016, Armstrong called three witnesses: Paylor, Lenease Gardner Myles, and himself.  (*See* Min. Entry, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 58.)  Paylor testified regarding his communication with Armstrong after the trial verdict, at the presentence report interview, and following the interview.  With respect to their conversation after the verdict was returned, Paylor specifically recalled that he and Armstrong walked out of the courtroom together, without anyone else present.  He could not recall the specific details of their conversation, but testified that, when representing a client who is not in custody, it is customary for him to speak with the client about the possibility of an appeal after the return of a guilty verdict.  With respect to their conversation at the presentence report interview, Paylor testified that he did not recall the specific details of their conversation, but that he would have spoken with Armstrong to explain the presentence report process and to advise Armstrong to let him know if Armstrong wished to speak privately.  Paylor testified that he had no verbal contact with Armstrong after the presentence report interview, but that he sent letters to Armstrong's mailing address when he received the presentence report, when the sentencing hearing was continued, and when Armstrong was sentenced in absentia.  On cross, Paylor acknowledged that the copy of the letter that he sent to Armstrong after sentencing (Exhibit 1) was unsigned because he had only an electronic copy of the document.  Paylor further testified that he enclosed with the letter all forms necessary for Armstrong to perfect his appeal.

Myles, Armstrong's girlfriend at the time of the trial, testified that she was present when the jury returned the verdict and when Paylor spoke with Armstrong after the verdict. She testified that she heard Paylor and Armstrong discuss the possibility of filing an appeal and that Armstrong advised Paylor to "jump on it," meaning to go ahead and file the appeal. On cross, Myles acknowledged that Paylor did not tell Armstrong that he could file the appeal at that time and that Paylor indicated that he would need to wait until after the sentencing hearing, i.e., "he would have to talk about it after sentencing." (Testimony of Myles, March 28, 2016 Hr'g.)

Armstrong testified about his conversations with Paylor after the verdict and at the presentence report interview. Armstrong testified that he spoke with Paylor after the verdict was returned and that Myles was present for the conversation. Armstrong further testified that he recalled speaking with Paylor about filing an appeal, and that Paylor informed him that Paylor would do so after the sentencing. Armstrong testified that he also spoke with Paylor at the presentence report interview and that Paylor again informed him that Paylor would file an appeal after sentencing. On cross, Armstrong testified that he remembered having a telephone conversation with his mother, Florence Crowell, wherein they discussed having Nikki "take every charge," but maintained that he was not asking Nikki to take *his* charge because the firearm was hers. (*See also* Tr. of Calls, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 27-2.) Armstrong also agreed that, when he spoke with Paylor after the verdict, Paylor informed him that it was not the appropriate time to file an appeal, but Armstrong maintained that Paylor agreed to file a notice of appeal after the sentencing. When asked where he was when he absconded, Armstrong replied that he was "in the streets."

Considering Armstrong's criminal record, his attempt to have his sister "take the charge," the fact that he absconded before sentencing, and his vague answers when asked about his

absconding, it is evident that Armstrong has repeatedly attempted to evade the criminal justice system when beneficial to his own interests.  The Court, therefore, finds that Armstrong's testimony was not credible.  The Court also finds that Paylor's testimony that no one else was present during his post-verdict conversation with Armstrong was significantly more credible than Myles' testimony that she was present for that conversation.  Specifically, the Court notes that Myles had a past relationship with Armstrong and stated that they are still friends.  While Paylor did not recall the specific details of his conversation with Armstrong after the verdict, Paylor was confident that no one else was present during that conversation.  Accordingly, based on the testimony presented at the evidentiary hearing and these credibility findings, the Court finds that Armstrong and Paylor discussed the possibility of the appeal after the return of the jury verdict, but that Armstrong did not expressly instruct Paylor to file a notice of appeal at that time or at any later time.  The Court also finds that Paylor attempted to contact Armstrong after the sentencing in absentia, but was unable to do so.  Paylor then sent a letter to Armstrong informing Armstrong of his right to appeal.  (*See* Ex. 1 to March 28, 2016 Hr'g (Nov. 15, 2011 Letter of Paylor to Armstrong).)

In *Rodriquez v. United States*, 395 U.S. 327 (1969), the Supreme Court held that the failure of defense counsel to file a notice of appeal despite being instructed to do so by his client constitutes *per se* ineffective assistance of counsel, without regard to the legal merit of any issues that might be raised on direct appeal.  *See also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.  This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice.  Counsel's failure to do so cannot be considered a strategic decision; filing a

notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." (citations omitted)); *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[T]he failure to perfect a direct appeal, in derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment."). Nonetheless, the Sixth Circuit has "emphasize[d] . . . that a defendant's actual 'request' is still a critical element in the Sixth Amendment analysis. The Constitution does not require lawyers to advise their clients of the right to appeal. Rather, the Constitution is only implicated when a defendant actually requests an appeal, and his counsel disregards the request." *Ludwig*, 162 F.3d at 459; *see also Regalado v. United States*, 334 F.3d 520, 525-26 & n.3 (6th Cir. 2003) (a client's "express[ion of] her desire to file an appeal" is not equivalent to a specific instruction to her attorney to file an appeal).

In *Flores-Ortega*, the Supreme Court stated that:

> [i]n those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning—advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance. That question lies at the heart of this case: Under what circumstances does counsel have an obligation to consult with the defendant about an appeal?

*Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000) (citation omitted). The Court held that:

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want an appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

*Id.* at 480.

In this case, Armstrong argues that Paylor rendered ineffective assistance because he (1) failed to file a notice of appeal despite explicit instructions and (2) failed to consult with Armstrong about an appeal.[3] The first argument presents a factual dispute, while the second presents a legal question. With respect to the first argument, because the Court credits the testimony of trial counsel, rather than Armstrong or Myles, and finds that Armstrong did not explicitly direct his attorney to file a notice of appeal, the Court finds that Armstrong's attorney did not render ineffective assistance by failing to perfect an appeal.

With respect to the second argument, the parties do not dispute that Paylor attempted to contact Armstrong after sentencing, but was unable to do so. The question presented is whether Paylor's attempts to contact Armstrong satisfied his duty to consult. Under *Flores-Ortega*, the duty to consult refers to the obligation to "advis[e] the defendant about the advantages and disadvantages of taking an appeal[] and mak[e] a reasonable effort to discover the defendant's wishes." 528 U.S. at 478. During their conversations after the return of verdict and at the presentence report interview, Paylor advised Armstrong about the possibility of an appeal after sentencing. As of Armstrong's sentencing hearing on November 14, 2011, Paylor had not had verbal contact with Armstrong for at least six months. Paylor, therefore, sent a letter dated November 15, 2011, to the last known address that he had for Armstrong, which was his mother's address, 4206 Clydesdale Drive, Memphis, Tennessee 38109. In that letter, Paylor informed Armstrong of his sentence and advised him that he had ten days from November 14,

_____

[3] At the evidentiary hearing, Armstrong appeared to concede the second argument. The Court asked Armstrong's counsel, "So he sends the notice, so he doesn't violate the obligation to consult because he's done all he can to do[,] that['s right]?" to which Armstrong's counsel responded, "Right." After this affirmative statement, however, Armstrong's counsel stated, "But if you can't consult, that's the interesting question. You try to comply with the obligation to consult and you can't consult, what is your professional obligation at that point?" Because this additional statement clouds Armstrong's counsel's concession of this ground, the Court considers Armstrong's argument that his trial counsel failed to consult with him about an appeal.

2011, to file a notice of appeal. Paylor also enclosed all necessary documents for Armstrong to perfect an appeal. The Court finds that Paylor's discussions with Armstrong about the possibility of an appeal, in combination with the letter he sent to Armstrong following sentencing, sufficed to advise Armstrong of the advantages and disadvantages of taking an appeal. Moreover, the Court finds that Paylor's attempts to contact Armstrong and post-sentencing letter to Armstrong constituted a reasonable effort to discover Armstrong's wishes regarding an appeal. Although Paylor was unable to verbally contact Armstrong because Armstrong had absconded, Paylor satisfied his duty to consult with Armstrong about an appeal.

Claim 1 is without merit and is DISMISSED.

**B.    Failure to Challenge ACCA Enhancement Based on Lack of Predicate Convictions (Claim 2)**

In Claim 2, Armstrong claims that his counsel rendered ineffective assistance for failing to challenge the Court's subject matter jurisdiction to impose a sentence in excess of ten years. (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 4, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22; *see also* Second Am. *pro se* § 2255 Mot. at PageID 183, *id.*, ECF No. 22-5.) Armstrong asserts that he did not have three predicate convictions under the Armed Career Criminal Act ("ACCA"), and accordingly, the Court could not have imposed a sentence greater than the statutory maximum of ten years under 18 U.S.C. 922(g)(1). (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 4, *id.*, ECF No. 22.)

As an initial matter, Armstrong's claim that his counsel failed to object to the PSR ignores the fact that Armstrong absconded prior to sentencing, which had the effect of denying counsel the opportunity to consult with his client. In other words, Armstrong decided to become a fugitive, failed to communicate with his counsel prior to sentencing, failed to appear at any of the four sentencing hearings set in his criminal case, and now seeks to blame counsel for the

sentencing outcome. In his affidavit, Paylor explained that he "objected to the [sentencing] proceedings and refused to participate because [he] had not had an opportunity to consult with [Armstrong] on the contents of the presentence investigation report, and [he] did not think it was proper . . . to participate." (Paylor Aff. ¶ 2(a), *id.*, ECF No. 27-1.) Additionally, Paylor stated that he "had no legal basis or any basis in fact to challenge the designation; nor, did [he] have an opportunity to discuss the presentence investigation report with Mr. Armstrong. . . . [who] did not respond to any of the letters [Paylor] sent him requesting that [Armstrong] come and meet with [Paylor] to discuss the presentence investigative report." (*Id.* ¶ 2(b).)

Even assuming that Armstrong's counsel had a duty to object to the PSR without consulting with his client, his counsel was not deficient in failing to object because Armstrong has three predicate convictions under the ACCA. The PSR identified five convictions as predicate convictions: two 1993 convictions for aggravated robbery; a 1998 conviction for intentionally evading arrest in a motor vehicle; a 1998 conviction for robbery; and a 2003 conviction for intentionally evading arrest in a motor vehicle. At the time, any combination of these five convictions would have designated Armstrong as an Armed Career Criminal, and accordingly, Paylor did not render ineffective assistance by failing to object.

Armstrong's convictions for intentionally invading arrest in a motor vehicle no longer qualify as predicate convictions because they fall under the now-defunct ACCA residual clause. *See United States v. Franklin*, 622 F. App'x 501, 514 (6th Cir. 2015); *see also Johnson v. United States*, 135 S. Ct. 2551 (2015). Armstrong's one robbery conviction and two aggravated robbery convictions, however, qualify as violent felonies under 18 U.S.C. § 924(e)(2)(B)(i) because they involve the "use . . . or threatened use of physical force." *See United States v. Bailey*, --- F. App'x ---, No. 14-6524, 2015 WL 4257103, at *4 (6th Cir. 2015) (per curiam); *United States v.*

*Mitchell*, 743 F.3d 1054, 1059-60 (6th Cir. 2014). Accordingly, Armstrong was not wrongly sentenced as an armed career criminal as a result of his counsel's failure to object to the ACCA enhancement at sentencing. His trial counsel could not be considered deficient for failing to challenge a lawful exercise of the district court's authority nor could his failure to object be considered prejudicial.

Claim 2 is without merit and is DISMISSED.

### C. Failure to Challenge ACCA Enhancement Based on Conviction Obtained by Alford Plea (Claim 3)

In Claim 3, Armstrong claims that his counsel was ineffective for failing to challenge the use of Armstrong's 1998 robbery conviction, which "resulted from an Alford-Type guilty plea." (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 5, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22; *see also* Second Am. *pro se* § 2255 Mot. at 8, *id.*, ECF No. 22-5; J. of Criminal Ct. of Shelby Cnty., Tenn., *id.*, ECF No. 22-2.) Armstrong cites to *United States v. McMurray*, 653 F.3d 367 (6th Cir. 2011), in support of his argument that his robbery conviction resulting from an Alford plea may not be used as a predicate offense under the ACCA. (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 5, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22.) The Government maintains that Paylor did not render ineffective assistance by failing to object to the PSR because "[i]n his affidavit, Mr. Paylor notes that he did not have any opportunity to review the PSR or any potential objections with the Petitioner due to the Petitioner's fugitive status." (Resp. at 6, *id.*, ECF No. 27.)

The Sixth Circuit has instructed that

the fact that a plea is an *Alford*-type plea does not prevent the resulting conviction from ever serving as a predicate conviction for sentence enhancement. Convictions based on *Alford*-type pleas can be predicate convictions under the

> ACCA if the qualifying crime is inherent in the fact of the prior conviction—i.e., if the statute of conviction is categorically a "violent felony" . . . .

*McMurray*, 653 F.3d at 381. As discussed above, robbery under Tennessee law is categorically a violent felony for ACCA purposes. *See Mitchell*, 743 F.3d at 1059-60. Despite the fact that Armstrong's 1998 robbery conviction was based on an *Alford* plea, it qualifies as a predicate conviction under the ACCA because the Tennessee robbery statute is categorically a "violent felony." Accordingly, Armstrong cannot show that his counsel's performance was deficient or that he was prejudiced by his counsel's failure to raise this objection at sentencing.

Claim 3 is without merit and is DISMISSED.

### D. Failure to Make Rule 29 Motion (Claim 4)

In Claim 4, Armstrong argues that his counsel rendered ineffective assistance for failing to move for judgment of acquittal based on insufficient evidence. (Second Am. *pro se* § 2255 Mot. at 9, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 7, *id.*, ECF No. 22.) Specifically, Armstrong asserts that there was no evidence that he had actual or constructive possession of the firearm. (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 7, *id.*, ECF No. 22.) The Government argues that Paylor did move for a judgment of acquittal under Rule 29, which was denied by the Court. (Resp. at 7, *id.*, ECF No. 27.)

The record reflects that Paylor did, in fact, make a motion under Rule 29. At the conclusion of the Government's case, the following colloquy occurred:

> **Mr. Paylor:** Your Honor, at this time I would like to move for judgment of acquittal. Based on the testimony that we have heard thus far in the proceeding, I think – I believe the government has failed to make their burden even looking at the evidence in the light most favorable to the government regarding the issue of the prior conviction, that's been established without a doubt by stipulation.

> **The Court:**    Right.
>
> **Mr. Paylor:**    Regarding the issue as to the nexus, I believe the government has met their burden on that. There's not been any contradiction to the testimony offered, and – but based on the element of possession, there has been no testimony whatsoever that establishes that the house or the room for which Mr. Armstrong – for which the firearm was found by the officers belonged to Mr. Armstrong. There's no evidence that indicated that Mr. Armstrong actually possessed the Taurus .357 caliber revolver. I believe the government has failed in their burden, and we would ask for a judgment of acquittal at this time.

(1/12/2011 Trial Tr. 203:24-204:19, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 85.)   After hearing the Government's response, the Court denied the motion for judgment of acquittal, finding that, "[i]n this case, the government has submitted, frankly, more than ample evidence to survive a motion under the standard that applies in this case." (*Id.* 205:21-206:8.)   As is evident, Armstrong's counsel did move for a judgment of acquittal on the precise basis that Armstrong asserts he should have done so.   Accordingly, Armstrong cannot show that his counsel's performance was deficient or prejudicial in this regard.   To the extent that Armstrong seeks to assert a substantive claim that the Government presented insufficient evidence to establish possession, he has not demonstrated cause or prejudice to excuse his procedural default or that he is "actually innocent." *See Wheeler v. United States*, 329 F. App'x 632, 634 (6th Cir. 2009) (finding that a movant who failed to raise a claim on direct appeal "must demonstrate both cause and actual prejudice in order to assert his defaulted claim" (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998))).[4]

---

[4] Within Claim 4, Armstrong also makes a tangential argument that his counsel was ineffective for failing to call as a witness Angeles Tucker, Armstrong's sister, who would have testified that she owned the firearm at issue. (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at PageID 11-15, *id.*, ECF No. 22; *see also* Reply at 4, *id.*, ECF No. 33.) Specifically, Armstrong argues that "[a]lthough petitioner's attorney claimed to have talked to [Tucker], he neglected to secure an affidavit from her verifying that she owned the firearms." (Reply at 4, *id.*, ECF No. 33.) In his affidavit, Paylor explains that he spoke with Tucker "on a number of occasions . . . regarding the basis of her knowledge of the facts." (Paylor Aff. ¶ 2(e), *id.*, ECF No. 27-1.)

Claim 4 is therefore without merit and is DISMISSED.

## E.    Failure to Request Suppression Hearing (Claim 5)

In Claim 5, Armstrong asserts that his trial counsel was ineffective for failing to move to suppress his personal information and documents, which were seized during the search of his residence.  (Second Am. *pro se* § 2255 Mot. at PageID 183, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 8, *id.*, ECF No. 22.)  He argues that he was prejudiced by the inclusion of this evidence "because the jury was led to believe the documents inside the house were from bills obtained from the house, when in fact, the documents had no relevance to the house provided in the search warrant."  (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 8, *id.*, ECF No. 22.)

The Government argues that:

> In his affidavit, Mr. Paylor notes that there was no basis in fact or law to suppress the seizure of these identifying documents, considering that officers had obtained a lawful anticipatory warrant and that the Petitioner was lawfully arrested following the discovery of a firearm with his identification.  Even had Mr. Paylor

---

After their discussions, Paylor "decided, based on what she said at [his] office, as well as the nature of her and Ms. Crowell's previous conversations by jail telephone with the Petitioner, that Ms. Tucker would not be a good witness for Mr. Armstrong's matter."  (*Id.*)

"The tactical decisions of trial counsel are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy."  *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001).  The investigation in this matter was initiated due to the interception of a package containing illegal narcotics, which was addressed to Tucker.  (1/12/2011 Trial Tr. 73:19-74:4, *United States v. Armstrong*, No. 2:09-cr-20477-JPM (W.D. Tenn.), ECF No. 85.)  When the officers arrived at the residence, one of the detectives observed Tucker run out the back door with the package, attempting to hide it behind a barbeque grill.  (*Id.* at 77:4-15.)  Additionally, the recordings of the jail phone calls reveal a conversation between Armstrong and his mother, wherein Armstrong asks his mother to tell Tucker to take every charge, and his mother informs him that "Nikki will try to get you out of there."  (Ex. 22, *id.*, ECF No. 55; 1/12/2011 Trial Tr. 154:10-155:10, Jan. 12, 2011.)  Considering this evidence, Armstrong cannot overcome the presumption that Paylor's decision not to call Tucker as a witness, or even obtain an affidavit, which would have been inadmissible at trial, was sound trial strategy.  Accordingly, Paylor's performance cannot be considered deficient in this regard.

filed such a motion, the Petitioner would have been unable to demonstrate standing based on his claim during trial that he did not live at the residence.

(Resp. at 8, *id.*, ECF No. 27 (citation omitted).)

At trial, Paylor argued that the "paperwork seized in the defendant's bedroom that shows a connection between him and the person that sent the package" should not be admitted as evidence. (1/11/2011 Trial Tr. 54:13-24, *United States v. Armstrong*, No. 2:09-cr-20477-JPM (W.D. Tenn.), ECF No. 84.) The Court determined, however, that "obviously . . . , you can submit evidence that shows that [the defendant] was in control of that space. . . . And one way to do that is to show that paperwork that was important to the individual was there." (*Id.* at 55:15-21.) The next day, the Court elaborated on its reasoning, stating:

> Of course, I did check on res gestae. There's a number of cases on that in the Sixth Circuit. . . .
>
> One of the cases is United States versus Rhodes, 2008 case in which the court, of course, noted that the drugs in that case were res gestae or background evidence. The court explained proper background evidence as a causal, temporal or spa[t]ial connection with the charged offense and includes evidence that is a prelude to the charged offense is directly probative of the charged offense arises from the same events as the charged offense, forms an integral part of the witness' testimony or completes the story of the charged offense, and they cite United States versus Martin. In this case, three baggies containing controlled substance were adjacent to Rhodes' bedroom, had a spa[t]ial and temporal connection to the ammunition. In this case, the dispute is whether or not this room is one that -- the room of the defendant. So there are other cases that talk about it if we need to go into it later.

(1/12/2011 Trial Tr. 68:5-25, *id.*, ECF No. 85.)

The paperwork was ultimately introduced at trial through Brett Simonsen, a narcotics detective with the Shelby County Sheriff's Department involved in the search of Armstrong's mother's home. (*See id.* 72:7-12.) Detective Simonsen testified that, when they searched the residence, "[i]t appeared that Mr. Armstrong was living in [a] particular den area. He had personal items, paperwork, clothing." (*Id.* at 78:21-79:1.) Simonsen also testified that the

officers recovered a firearm in "a plastic dresser" in that room. (*Id.* at 79:11-20.) He testified that they "recovered about three pieces of identification in that drawer with the firearm," including a medical examiner's certificate, a birth certificate, and a Social Security card. (*Id.* at 80:3-10, 86:14-23, 88:9-20, 89:15-21; *see also* Exs. 12, 13, 14.) Additionally, Simonsen testified that they recovered other paperwork in that room, such as two legal filings to the State of Oklahoma and a contract for legal services. (1/12/2011 Trial Tr. 90:25-91:13, 103:5-9, *id.*, ECF No. 85; *see also* Exs. 15, 16.) The Court admitted this evidence for the limited purpose of showing who was residing in the room. (1/12/2011 Trial Tr. 91:22-92:10, *id.*, ECF No. 85; *see also id.* at 92:11-102:6 (discussing necessary redactions to ensure that the documents were considered only for the permissible limited purpose).)

As is evident, although Paylor did not request a suppression hearing, he did object to the admission of the documents obtained from the room where the firearm was located. Moreover, the Court rejected Paylor's arguments, finding that the documents were probative to show that Armstrong was in control of the room where the gun was found. Armstrong fails to demonstrate that his counsel acted unreasonably in making the suppression argument at trial, rather than in a pretrial suppression hearing, particularly in light of the weak legal and factual basis for the motion. *See Hurley*, 10 F. App'x at 260 ("The tactical decisions of trial counsel are particularly difficult to attack, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy."). Moreover, Armstrong fails to establish that his counsel's failure to request a suppression hearing was prejudicial to the defense. Even if counsel had requested a suppression hearing, the Court would have denied a motion to suppress the documents for the same reasons it overruled the objection to said documents at trial.

Accordingly, Claim 5 is without merit and is DISMISSED.

**F.     Failure to Object to Subject Matter Jurisdiction (Claim 6)**

In Claim 6, Armstrong argues that his trial counsel rendered ineffective assistance by failing to object to the use of his convictions for intentionally evading arrest as predicate convictions for ACCA enhancement purposes. (Second Am. *pro se* § 2255 Mot. at PageID 183, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22-5; *see also* Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 9-10, *id.*, ECF No. 22.) This argument is very similar to the argument raised in Claim 2. As the Court discussed above, *see supra* Part III.B, at the time of Armstrong's sentencing, convictions under the Tennessee statute for intentionally evading arrest qualified as predicate convictions under the ACCA's residual clause. *Franklin*, 622 F. App'x at 514. According, Paylor's performance was not deficient for failing to object to the use of these convictions.

In *Johnson*, the Supreme Court found the ACCA's residual clause unconstitutional, and accordingly, Armstrong's intentionally evading arrest convictions no longer qualify as predicate offenses under the ACCA. Armstrong, however, still has three predicate convictions: two 1993 aggravated robbery convictions and one 1997 robbery conviction. *See supra* Part III.B. Thus, even if Paylor had objected to the use of the intentionally evading arrest convictions, Armstrong would have been sentenced as an armed career criminal. Because Armstrong can show neither deficient performance nor prejudice, the Court finds that Claim 6 is without merit and is DISMISSED.

**G.     Failure to Make Rule 29 Motion (Claim 7)**

In Claim 7, Armstrong argues that his counsel rendered ineffective assistance for failing to make a Rule 29 motion based on the Government's failure to establish dominion and control

for constructive possession, one of the elements of 18 U.S.C. § 922(g).  (Second Am. *pro se* § 2255 Mot. at PageID 183, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 22-5; see also Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at PageID 11-15, *id.*, ECF No. 22.)  Armstrong further argues that the Court abused its discretion "by not giving a limited instruction to the jury that mere proximity near contraband did not constitute or prove dominion and control" and that his counsel was ineffective for failing to object to the lack of said instruction.  (Mem. in Supp. of Second Am. *pro se* § 2255 Mot. at 15, *id.*, ECF No. 22.)

As discussed above, Armstrong's counsel did make a Rule 29 motion, arguing that the Government failed to present sufficient evidence to establish that Armstrong had constructive possession of the firearm.  *See supra* Part III.C.  Additionally, the Court properly instructed the jury as to the elements of the charge against Armstrong, and his counsel therefore had no basis to object to the Court's instruction.  First, the Court instructed the jury on the elements of the charge as follows:

> The government must prove each of the following elements beyond a reasonable doubt in order to sustain its burden of proving the defendant guilty as to Count 1.
>
> First, that the defendant had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year as charged;
>
> Second, that the defendant knowingly possessed a firearm as charged; and
>
> Third, that the possession charged was in or affecting interstate commerce.

(1/12/2011 Trial Tr. 295:5-14, *United States v. Armstrong*, No. 2:09-cr-20477-JPM (W.D. Tenn.), ECF No. 85; *see also* Jury Instrs. 17, *id.*, ECF No. 46.)  The Court then specifically instructed the jury on how to determine "possession":

> To possess means to have something within a person's control.  This does not necessarily mean that the defendant must hold it physically, that is, have actual possession of it.  As long as the firearm is within the defendant's control,

he possesses it. If you find that the defendant either had actual possession of the firearm in Count 1 or that he had the power and intention to exercise control over the firearm, even though it was not in his physical possession[,] you may find that the government has proven possession.

The law also recognizes that possession may be sole or joint. If one person alone possesses it, that is sole possession. However, it is possible that more than one person may have the power and intention to exercise control over the firearm. This is called joint possession. If you find that the defendant had such power and intention, then he possessed the firearm under this element even if he possessed it jointly with another. Proof of ownership of the firearm is not required.

. . . .

Next, I want to explain some more about possession. The government does not necessarily have to prove that the defendant physically possessed the Taurus .357 caliber revolver as charged in Count 1 for you to find him guilty. The law recognizes two kinds of possession, actual possession and constructive possession. Either one of these, if proved by the government, is enough to convict.

To establish actual possession, the government must prove that the defendant had direct, physical control over the firearm and knew that he had control of it.

To establish constructive possession, the government must prove that the defendant had the right to exercise physical control over the firearm, and knew that he had this right, and that he intended to exercise physical control of the firearm at some time either directly or through other persons.

. . . .

But understand that just being present where something is located does not equal possession. The government must prove that the defendant had actual or constructive possession of the firearm and knew that he did for you to find him guilty of that charge.

(1/12/2011 Trial Tr. 296:23-299:2, *id.*, ECF No. 85; *see also* Jury Instrs. 19-22, *id.*, ECF No. 46.)

Despite Armstrong's contention, the Court did explicitly instruct the jury that mere presence near an object does not prove possession. Accordingly, Armstrong's counsel cannot be considered to have ineffective assistance for failing to object to this instruction. To the extent

that Armstrong makes a substantive claim that the Court abused its discretion in instructing the jury, this claim has been procedurally defaulted. *See Wheeler*, 329 F. App'x at 634. Nevertheless, Armstrong's claim fails on the merits because the Court properly instructed the jury on possession. Claim 7 is without merit and is DISMISSED.

Because Armstrong is not entitled to relief on any of the issues raised in his § 2255 Motion, the Court DENIES the § 2255 Motion. Judgment shall be entered for the Government.

## IV. APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005).

There can be no question that the issues raised in Movant's § 2255 Motion are meritless for the reasons previously stated. Because any appeal by Movant on the issues raised in his § 2255 Motion does not merit further review, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Id.* at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[5]

## V.     MOTION FOR REFUND

Also before the Court is Armstrong's motion for a refund of a payment made to Robert Brooks, who Armstrong had retained to file the § 2255 Motion. (Mot. for Refund, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 35.) Brooks filed a motion

---

[5] If Movant files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

to withdraw approximately three months after filing Armstrong's § 2255 Motion, after determining that there was "nothing more that counsel [could] do for [the petitioner]." (Mot. to Withdraw at 1, *id.*, ECF No. 5.) In the instant motion, Armstrong asserts that he had a verbal agreement that Brooks would represent him in the instant matter for $7,500.00. (Mot. for Refund at 1, *Armstrong v. United States*, No. 2:12-cv-02980-JPM-dkv (W.D. Tenn.), ECF No. 35.) Armstrong asserts that he paid $4,942.00 to Brooks as an initial payment. (*Id.*) Armstrong acknowledges that Brooks purchased trial transcripts for $1,292.00, but seeks a refund of the remaining $3,650.00 paid to Brooks. (*Id.* at 2.)

Because Brooks is not a party to the instant action, this motion is not properly before the Court. Accordingly, Armstrong's motion to refund the payment made to his attorney is DENIED.

IT IS SO ORDERED, this 30th day of March, 2016.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE